UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

        Plaintiff,                Case No. 10-cr-20388-3
                                          Hon. Mark A. Goldsmith

vs.

D-3 SHAWN RENARD SMITH,

        Defendant.

_____/


**OPINION & ORDER**
**DENYING DEFENDANT'S MOTION TO VACATE SENTENCE (Dkts. 732, 743),**
**DENYING DEFENDANT'S MOTION FOR TRANSCRIPTS (Dkt. 746),**
**DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE A REPLY**
**TO THE GOVERNMENT'S RESPONSE BRIEF (Dkt. 747), AND**
**DENYING A CERTIFICATE OF APPEALABILITY**


On September 5, 2012, judgment entered against Defendant after he was convicted of conspiracy to distribute and possess with intent to distribute controlled substances, 21 U.S.C. §§ 846, 841(a)(1); possession with intent to distribute cocaine, 21 U.S.C. §§ 841(b)(1)(C), 841(a)(1); possession with intent to distribute heroin, id.; felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(a)(2); and possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c). See Judgment at 2 (Dkt. 569).

Defendant, filing pro se, has filed two motions to vacate his sentence (Dkts. 732, 743). The Government has responded. For the reasons set forth below, the motions are denied.

**I. FIRST MOTION TO VACATE SENTENCE (Dkt. 732)**

Defendant invokes the Supreme Court's recent decision in Johnson v. United States, 135 S. Ct. 2551 (2015), which invalidated the so-called "residual clause" in 18 U.S.C. § 924(e) because it was unconstitutionally vague. Defendant, who was convicted of possession of a

firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c), argues that "[t]he § 924(e) and § 924(c) residual clause[s] are virtually identical," and, as a result, Johnson should invalidate his conviction.  See Def. 1st Br. at 2 (Dkt. 732-1).

This argument fails for two reasons.  First, as pointed out by the Government, Defendant was not convicted under the portion of § 924(c) pertaining to crimes of violence.  See Gov't Resp. at 3; see also 18 U.S.C. § 924(c)(1)(A) ("any person who, during and in relation to any crime of violence or drug trafficking crime . . . , uses or carries a firearm . . . ." (emphasis added)).  Thus, the statute's definitions of crimes of violence, vague or not, are irrelevant to this case.  Rather, Defendant was convicted under the portion of § 924(c) that is triggered due to the defendant's drug trafficking crime.

In addition, it is settled law in this circuit that Johnson does not apply to § 924(c).  See United States v. Taylor, 814 F.3d 340 (6th Cir. 2016).

Accordingly, this motion is denied.

## II.  SECOND MOTION TO VACATE SENTENCE (Dkt. 743)[1]

In Defendant's second motion to vacate, he claims that trial and appellate counsel was ineffective.  This argument attacks counsel's performance in two areas:  (i) counsel's failure to perform an investigation that allegedly would have revealed that he had a diminished role in the conspiracy; and (ii) counsel's failure to successfully persuade either this Court or the Court of Appeals that the jury should have been instructed that it was free to attribute to Defendant a lesser drug quantity than was attributed to the entire conspiracy.  The arguments are related; in

---

[1] Although successive habeas petitions must be referred to the Sixth Circuit, in the interest of the efficient administration of justice this Court construes the second motion as a supplement to his original motion.  Both were filed within the limitations period, and this Court had not rendered decision on the first motion when the supplement was filed.  However, for ease of reference to the docket, this opinion will refer to the supplement as a motion, because that is how Defendant titled it.

each, Defendant seeks to establish that he was responsible for a smaller amount of drugs, either legally or factually. Because Defendant fails to satisfy the ineffective-assistance standard, these motions are denied.

The Supreme Court set forth a two-prong test for evaluating claims of ineffective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). In order to demonstrate ineffective assistance of counsel, a petitioner must show both (i) that defense counsel's performance was deficient and (ii) that petitioner suffered prejudice as a result. <u>Id.</u> at 687. Deficiency of counsel is found if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>United States v. Fortson</u>, 194 F.3d 730, 736 (6th Cir. 1999). There is a presumption that counsel's performance was reasonable. <u>United States v. Foreman</u>, 323 F.3d 498, 503 (6th Cir. 2003). "A court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." <u>Strickland</u>, 466 U.S. at 696.

**A. "Multiple Conspiracies" Theory**

In Defendant's first argument, he accuses the Government of erroneously grouping several conspiracies under the umbrella title of the "Dayton Mafia," when, in fact, that term referred to "Dayton Mafia Records," a legitimate business. <u>See</u> Def. 2nd Br. at 6. Counsel's performance allegedly was deficient for failing to conduct an independent investigation that would have revealed Dayton Mafia Records to be a record label, rather than a drug distribution conspiracy. <u>Id.</u> This fact is relevant, says Defendant, because he was convicted and sentenced for conspiracies other than the one in which co-Defendant Lamonte Watson was running, and the use of a legitimate business to form the "rim" in a hub-and-spoke conspiracy wheel sidestepped

the Government's burden to show that the separate conspiracies were, in fact, somehow related. See id. ("The testimony from Woods and Knapp could establish a conspiracy between [Defendant] and them, but in order to connect this to Watson additional evidence was needed."). In addition to counsel's alleged failure "to investigate this legitimate business venture," Defendant asserts that counsel failed "to independently investigate the involvement of [co-conspirators] Woods, Randle, Knapp, and . . . Ratcliff," and that this constituted deficient performance because it resulted in this Court refusing to instruct the jury on multiple conspiracies for want of evidence. Id.

Defendant has failed to show prejudice regarding the term "Dayton Mafia." The Government points out that the term was never used at trial, see 2nd Gov't Resp. at 10 (citing Tr. Tr. at 57-58 (Dkt. 585) ("Now that treads upon what we had agreed not to bring up and that is the name Dayton Mafia. We have agreed that I'm going to ask Special Agent Wiggins that question substituting DM for Dayton Mafia . . . .")), and Defendant fails to explain how the use of this term outside the presence of the jury was misleading. Furthermore, as addressed below, Defendants' true objection is not to the misappropriation of the name of a legitimate business, but rather to the fact that too many people were identified as being part of a single overarching conspiracy. See Def. 2nd Br. at 6 ("By grouping the members as the Dayton Mafia group, an overarching conspiracy encompassing all the activities of its alleged members was created.").

Defendant has not shown deficient performance concerning the allegedly improper overinclusion of distinct conspiracies under one umbrella. Defendant asserts that his actions were insufficiently linked to the role of Isaac Meeks and the distribution network to which Meeks was linked. Defendant concedes that he conspired with Watson, and that Watson was portrayed as a supplier — the "hub" in this hub-and-spoke conspiracy theory. See Def. 2nd Br.

at 5, 7.  He also appears to concede that Watson conspired with Meeks, who had a distribution role.  Id. at 7 ("[Meeks] was not part of the vertical pattern of distribution involving [Defendant], but was part of a separate chain conspiracy with Watson and successive distributors connected only to Meeks.  At trial the government connected these two separate chain conspiracy [sic] as if they were spokes in a wheel conspiracy connected together to Watson . . . .").  The claim is that Meeks' conspiracy with Watson was legally separate from everyone else's conspiracy with Watson.  (Similarly, Defendant argues that his conspiracies with Wood and Knapp should not have been connected to his conspiracy with Watson, see id. at 6; but later he concedes that the multiple-conspiracies theory was legitimate as to Watson, Knapp, Woods, and himself, see id. at 7.)

Defendant does present a sound legal framework for his argument that the conspiracies were not sufficiently linked.  When a wheel has a single "hub," as Watson is alleged to have been, but that hub moves alone from spoke to spoke, a "rimless wheel" is created.  See Kotteakos v. United States, 328 U.S. 750, 755 (1946).  "[W]here the 'spokes' of a conspiracy have no knowledge of or connection with any other, dealing independently with the hub conspirator, there is not a single conspiracy . . . ."  United States v. Chandler, 388 F.3d 796, 807 (11th Cir. 2004) (citing Kotteakos, 328 U.S. at 754-755).

That said, and notwithstanding Defendant's failure to claim that he lacked knowledge of the allegedly separate "spokes" and their relationship to Watson, Defendant utterly fails to explain what counsel's investigation would have uncovered, and it is not clear what investigative tools that counsel allegedly should have used.  If indeed there was an absence of evidence linking the spokes to one another, that would have been apparent without an investigation.  Defendant states that "trial counsel failed to present evidence suggesting that [he] was involved

in distinct conspiracies," Def. 2nd Br. at 8, but he does not even speculate as to what evidence could have been discovered.

Furthermore, Defendant's allegation of prejudice is inadequate. He asserts that if counsel had performed the investigation, the results of the investigation would have precluded an instruction on multiple conspiracies. But Defendant's argument about deficient performance really only involves Meeks; he concedes elsewhere in his motion that the multiple-conspiracies theory was legitimate as between him and other co-defendants. See Def. 2nd Br. at 7. Given that a multiple-conspiracies instruction was appropriate, Defendant's failure to explain how the outcome would have changed if Meeks was singled out is fatal. Because Defendant failed to satisfy either the deliberate-indifference or prejudice prongs of the Strickland inquiry, his motion is denied as to the first ground.

### B. Jury Instruction on Conspiracy-Wide Drug Quantity

In Defendant's second motion's second argument, he claims that counsel was ineffective for failing to persuade this Court and the Sixth Circuit that the jury should have been free to find that a particular defendant was responsible for a lesser amount [of drugs attributable to the conspiracy at large] because certain quantities predate[d] his entry into the conspiracy or fall outside the scope of his involvement." Def. 2nd Br. at 8.

Counsel raised this argument on appeal, and the Sixth Circuit considered it fully. See Watson, 620 F. App'x at 507-510. Defendant essentially asks this Court to overrule the decision of the Sixth Circuit, on legal grounds, and he disguises this ploy as an ineffective-assistance claim. Counsel cannot have been ineffective for failing to assert a rule of law that the Sixth Circuit "squarely reject[ed]" in 2008, id. at 508 (citing United States v. Robinson, 547 F.3d 632

(6th Cir. 2008)); see also Krist v. Foltz, 804 F.2d 944, 946-947 (6th Cir. 1986) (counsel need not raise frivolous defenses or arguments to avoid a charge of ineffective representation).[2]

### III. OTHER MOTIONS

Also pending before this Court are Defendant's motion for transcripts (Dkt. 746) and his motion for an extension of time to file a reply brief (Dkt. 747).

The motion for transcripts is denied. Defendant concedes that his motion was due on November 23, 2016. See Def. 2nd Br. at 3. The motion for transcripts is dated January 19, 2017. Defendant offers no explanation for why he did not file this motion prior to, or even contemporaneously with, his § 2255 motion(s). No authority permits Defendant to use a late-filed motion for transcripts to permit him to "perfect" an otherwise-losing § 2255 petition after the statute of limitations has run. Such a rule would render the statute of limitations meaningless in many cases — particularly where, as here, Defendant offers no excuse for the delay. Even if Defendant had filed the motion prior to the expiration of the limitations period, that would likely not toll the running of the limitations period. See Carruth v. Scutt, No. 2:08-CV-12424, 2009 WL 1506672, at *5 (E.D. Mich. May 27, 2009) (collecting cases supporting proposition that

---

[2] Moreover, even though it would be exceedingly difficult (if not impossible) to convince the Sixth Circuit to overrule itself on this issue, Defendant fails to attempt to connect his argument to the ineffective-assistance framework by explaining how counsel's performance was objectively deficient. For example, he does not assert that counsel cited no cases when arguing that a different jury instruction was warranted, or that he cited the wrong cases. Rather, defendant's legal argument is almost devoid of reference to counsel. Puzzlingly, Defendant asserts — accurately — that "counsel knew that the Robinson decision negated the proposition 'that the jury should have been free to find that a particular defendant was responsible for a lesser amount [of drugs] . . . .'" Def. 2nd Br. at 8 (quoting United States v. Smith, 320 F.3d 647, 652 (6th Cir. 2003)); see also id. (noting that Robinson "rejected the argument that a drug conspirator is culpable only for the quantities attributable to him" and asserting counsel's knowledge of that decision). In short, Defendant concedes that his counsel was aware of, and acted in accordance with, governing law.

"[f]ederal courts have refused to extend the tolling provisions of 28 U.S.C. § 2244(d) to motions for . . . transcripts . . . .").  The motion is denied.

The motion for an extension of time to file a reply to the Government's response is denied as moot.  Defendant's motion was denied upon the Court's own review of its contents; with the expectation of one reference to the use of the term "Dayton Street Mafia" in the record that Defendant could not possibly rebut, there is nothing in the Government's second response, such as a factual assertion, that Defendant could rebut that would change the result.

## IV.  CERTIFICATE OF APPEALABILITY

Because Defendant's claims for relief lack merit, the Court will also deny a certificate of appealability.  To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could conclude that the petition should have been resolved in a different manner, or that the issues presented were adequate enough for encouragement to proceed further.  See Slack v. McDaniel, 529 U.S. 473, 483-484 (2000).  For the reasons stated above, the Court will deny Defendant a certificate of appealability because reasonable jurists could not find this Court's assessment of his claims debatable.

## V.  CONCLUSION

For the foregoing reasons, the Court denies Defendant's motions to vacate his sentence pursuant to 28 U.S.C. § 2255 (Dkt. 98) and denies Defendant a certificate of appealability.

SO ORDERED.

Dated:  August 18, 2017                     s/Mark A. Goldsmith
    Detroit, Michigan                   MARK A. GOLDSMITH
                                            United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 18, 2017.

s/Karri Sandusky
Case Manager