UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,                            Case No. 10-20388

vs.                                          HON. MARK A. GOLDSMITH

SHAWN RENARD SMITH,

           Defendant.

_____/

**OPINION & ORDER**
**DENYING DEFENDANT'S MOTION FOR COMPASSIONATE**
**RELEASE (Dkt. 891)**

Defendant Shawn Smith, age 46, is currently incarcerated at the federal correctional institution in Fort Dix, New Jersey.  Following a jury trial, Smith was convicted for five offenses: (i) conspiracy to distribute and possess with intent to distribute controlled substances, (ii) possession with intent to distribute cocaine, (iii) possession with intent to distribute heroin, (iv) felon in possession of firearms, and (v) possession of a firearm in furtherance of a drug trafficking crime.  Judgment (Dkt. 569).  The Court sentenced him to 240 months' imprisonment for the first three offenses, 120 months' imprisonment for the fourth offense, and 60 months' imprisonment for the fifth offense, with the sentences for the first four offenses running concurrently with one another and the sentence for the fifth offense running consecutively to the others.  Id. at 3.  Smith has served approximately 11 years of his 25-year sentence.  If Smith earns full good time credit, his anticipated release date will be November 27, 2031.

On June 11, 2020, Smith filed a motion for compassionate release, arguing that his release was warranted because his health conditions, which include type II diabetes, hypertension, and

obesity, place him at higher risk of suffering severe illness from COVID-19 (Dkt. 839).  The Court denied this motion (Dkts. 865, 874).

On June 30, 2020, after filing his initial motion for compassionate release, Smith tested positive for COVID-19.  See Bureau of Prisons Medical Records at PageID.13301 (Dkt. 895).  Smith subsequently recovered and has not tested positive for the virus since then.  See id. at PageID.13194–13195, 13197, 13199, 13281, 13285, 13288, 13297 (testing negative on 7/13/20, 10/13/20, 11/20/20, 12/18/20, 1/14/21, 3/8/21, 4/5/21, and 4/22/21).  Smith is also now fully vaccinated against COVID-19, having received both doses of the two-dose Moderna vaccine on March 9 and April 7, 2021.  Id. at PageID.13191.

On May 18, 2021, Smith filed the instant motion for compassionate release, once again arguing that his health conditions place him at higher risk of severe illness from COVID-19 (Dkt. 891).[1]   The Government argues that Smith does not present extraordinary and compelling circumstances for release because he has already recovered from and been vaccinated against the virus (Dkt. 893).  The Court agrees with the Government.  Further, the factors listed in 18 U.S.C. § 3553(a) weigh against granting release.  For these reasons, Smith's motion is denied.[2]

## I.      LEGAL STANDARD

The First Step Act modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582(c), such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences.  United States v. Ruffin, 978 F.3d 1000, 1003–1004

---

[1] In his reply, Smith asks the Court to reduce his sentence to time served and order home confinement as a condition of his supervised release (Dkt. 897).  Smith's request for a sentence reduction and home confinement are denied for the same reasons that his request for immediate release are denied.

[2] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2).

(6th Cir. 2020).[3]  Before granting a compassionate-release motion, a district court must engage in a three-step inquiry: (i) the court must find that "extraordinary and compelling reasons warrant [a sentence] reduction," (ii) it must ensure "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (iii) it must "consider[] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)."  United States v. Jones, 980 F.3d 1098, 1101 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).  If all of those requirements are met, the district court "may reduce the term of imprisonment," but it need not do so.  18 U.S.C. § 3582(c)(1)(A).

Regarding the first step of the inquiry, the Sixth Circuit has held that, with respect to motions for compassionate release filed by imprisoned individuals, "extraordinary and compelling" reasons are not limited to those set forth in U.S.S.G. § 1B1.13.  Jones, 980 F.3d at 1109.  It further held that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion."  Id.

## II.     ANALYSIS

### A.  Extraordinary and Compelling Circumstances

With respect to motions for compassionate release premised on a defendant's fear of contracting COVID-19, the Sixth Circuit has held that "generalized fears of contracting COVID-19, without more, do not constitute a compelling reason" to grant compassionate release.  United States v. Ramadan, No. 20-1450, 2020 WL 5758015, at *2 (6th Cir. Sept. 22, 2020).  Rather, a defendant must point to specific conditions that create a higher risk that the defendant will contract

---

[3]  An incarcerated defendant must comply with the mandatory exhaustion requirements of § 3582(c) before filing a motion for compassionate release.  Here, the Government does not dispute that Smith has satisfied the exhaustion requirement.

3

the virus.  To determine whether a defendant's specific conditions render him particularly vulnerable to contracting COVID-19, courts generally consult the guidance on high-risk factors published by the Centers for Disease Prevention and Control (CDC).  See Elias, 984 F.3d at 521.

Because Smith has already contracted and recovered from COVID-19, the relevant inquiry is whether Smith has a high risk of reinfection.  Under current CDC guidance, "[c]ases of reinfection with COVID-19 have been reported, but remain rare."[4]  Although "the probability of SARS-CoV-2 reinfection is expected to increase with time after recovery from initial infection because of waning immunity and the possibility of exposure to virus variants," an "increasing number of published studies suggest that," presently, ">90% of recovered COVID-19 patients develop anti-SARS-CoV-2 antibodies" and "[a]dditional studies also demonstrate antibody response . . . can be durable for 6 months or more."[5]  Because Smith tested positive for COVID-19 one year ago, he likely developed antibodies that are potentially still providing him with immunity from the virus.  As a result of these antibodies, Smith's risk of reinfection is low.  A low risk of reinfection is not an extraordinary and compelling reason warranting release.  See, e.g., United States v. Johnson, No. 11-20493, 2021 WL 822495, at *3 (E.D. Mich. Mar. 4, 2021); United States v. Jackson, No. 17-55, 2021 WL 467590, at *2 (N.D. Ohio Feb. 9, 2021).

Further, after recovering from COVID-19, Smith received the two-dose Moderna vaccine. Because he received the second dose well over two weeks ago, he is now fully vaccinated, meaning

---

[4]  CDC, Reinfection with COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html [https://perma.cc/5X2L-KU4V].

[5]  CDC, Interim Guidance on Ending Isolation and Precautions for Adults with COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html [https://perma.cc/A3JB-L29W].

that he is protected to the fullest extent by the vaccine.[6]  According to the CDC, the vaccine reduces the risk of COVID-19 among people who are fully vaccinated "by 90 percent or more."[7] Regarding people who are vaccinated but still get COVID-19, the vaccine has been shown to "provide protection against severe illness and hospitalization among people of all ages eligible to receive them."  Id.  Significantly, "[t]his includes people . . . who are at higher risk of severe outcomes from COVID-19."  Id.  Due to the vaccine's high efficacy, once a defendant is vaccinated, his health conditions that may have previously placed him at higher risk of severe illness from COVID-19 are no longer extraordinary and compelling reasons for granting compassionate release.  See, e.g., United States v. Groom, No. 2:17-cr-159, 2021 WL 1220225, at *2 (S.D. Ohio Apr. 1, 2021); United States v. Miller, No. 13-20928, 2021 WL 1115863, at *2 (E.D. Mich. Mar. 24, 2021).

Smith's low risk of reinfection, coupled with the fact that he is fully vaccinated, render Smith's fear of reinfection a non-compelling reason to grant him release.  Even if Smith had shown the existence of extraordinary and compelling circumstances, his release would still be unwarranted based on the § 3553(a) factors, as explained below.

## B.  Section 3553(a) Factors

The § 3553(a) factors weigh against granting Smith release.  Before granting a sentence reduction under the First Step Act, the Court must consider the § 3553(a) factors, which include the nature and circumstances of a defendant's offenses, the seriousness of the offenses, the need to promote respect for the law, and the need to protect the public from further crimes by the

---

[6] CDC, "COVID-19 Vaccines That Require 2 Shots," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/second-shot.html [https://perma.cc/BX6K-WMR5].

[7] CDC, "COVID-19 Vaccines Work," https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html [https://perma.cc/W7M8-9LHJ].

defendant.  Smith contends that the § 3553(a) factors support his release.  Each of his arguments is addressed and rejected in turn.

Smith attempts to minimize the seriousness of his crimes by arguing that the offenses for which he is currently incarcerated "did not involve physical violence."  Mot. at 13.  However, the fact that Smith possessed a firearm in furtherance of a drug trafficking crime indicates that he was ready and willing to use physical violence to traffic drugs.  Further, even absent physical violence, Smith's drug trafficking-related crimes were undoubtedly serious.  His drug crimes involved the distribution of heroin and cocaine, which are categorized as schedule I and II controlled substances, respectively, due to their high potential for abuse.  The circulation of such addictive drugs in the community presents a grave danger to the community's health and wellbeing.

Smith also contends that he does not present a danger to the community.  The Court disagrees.  Before committing the instant drug trafficking offense, Smith was convicted of criminal sexual conduct in the second degree for forcibly raping a 17-year-old girl.  Sentencing Tr. at PageID.5516 (Dkt. 602).  He served seven years; was paroled; and, within a year, was returned to prison for three years on a parole violation based on a new conviction for dealing drugs.  Smith was released from prison in 2003.  Four years from his release, Smith returned to drug dealing.  Id.  Since being incarcerated for the instant drug trafficking offense, Smith has been sanctioned for possessing drugs or alcohol, and twice for possessing unauthorized items.  11/19/20 Op. at 3 (Dkt. 874).  Smith's criminal history casts doubt on his ability to be rehabilitated.  If he were released now, there would be a serious risk that he would commit further crimes—likely drug crimes—that would endanger the community.

Despite Smith's post-incarceration infractions for possession of drugs, alcohol, and unauthorized items, he contends that his post-conviction conduct favors granting release.  Namely, he

argues that his prison job, participation in educational courses, and efforts to help teach others support release. Mot. at 13–15. The Court commends Smith on his efforts towards rehabilitation. However, given Smith's multiple infractions, his post-conviction conduct does not, on balance, weigh in favor of granting him release.

Next, Smith argues that he has served "over 50%" of his sentence and that this weighs in favor of granting release. Mot. at 12. Smith is mistaken that he has served over half of his sentence. He has only served approximately 11 years of his 25-year sentence, meaning that he has served less than half of his sentence. The fact that Smith has served less than half of his sentence weighs against granting him release, as it would not promote respect for the law. See, e.g., Ruffin, 978 F.3d at 1008 (affirming district court decision that § 3553(a) factors did not support a sentence reduction in part because the defendant was yet to serve even half of his sentence); United States v. Richards, No. 12-20372, 2021 WL 912389, at *3 (E.D. Mich. Mar. 10, 2021) ("[A]llowing Defendant to be released after serving less than half of his sentence would not promote respect for the law or proper deterrence, [or] provide just punishment . . . .").

Smith also argues that release is warranted because his health has deteriorated since he contracted COVID-19 and was transferred to FCI Fort Dix. Mot. at 14. Specifically, he contends that he has experienced shortness of breath, fatigue, heart irregularities, and blurred vision. Id. His medical records plainly do not support his assertion. To the contrary, his medical records reflect that as of September 2020, Smith denied experiencing COVID-19 symptoms such as "fever/chills, cough, shortness of breath, fatigue, muscle/body aches, headache, new loss of taste or smell, sore throat, congestion/runny nose, nausea/vomiting, and diarrhea." BOP Medical Records at PageID.13239. To the extent that Smith suggests FCI Fort Dix is a particularly unsafe environment, this claim is also

contradicted by available data.  According to the BOP's website, FCI Fort Dix currently has no active COVID-19 cases among inmates or staff.[8]

Finally, Smith argues that he should be granted release because the Honorable Linda Parker recently granted a compassionate release motion filed by one of Smith's co-defendants, Isaac Meeks. Mot. at 13.  Meeks's circumstances are easily distinguishable from Smith's, however.  Notably, Meeks was facing a significantly shorter sentence than Smith.  Whereas Smith was sentenced to 25 years' imprisonment, Meeks was only sentenced to 15 years.  Smith's longer sentence is the product of several factors, including Smith's longer criminal history.  As discussed above, Smith's prior criminal history includes prior prison terms for the forcible rape of a minor and drug trafficking. Additionally, Meeks was released with just two years left on his sentence.  Unlike Meeks, Smith has more than a decade left on his sentence.

For these reasons, the § 3553(a) factors weigh against granting Smith's motion.

### III.  CONCLUSION

For the reasons stated above, Smith's motion for compassionate release (Dkt. 891) is denied.

SO ORDERED.

Dated: July 21, 2021                                    s/Mark A. Goldsmith
      Detroit, Michigan                        MARK A. GOLDSMITH
                                  United States District Judge

### <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 21, 2021.
                                       s/Karri Sandusky
                                       KARRI SANDUSKY
                                       Case Manager

---

[8] BOP, COVID-19 Cases, https://www.bop.gov/coronavirus/ [https://perma.cc/RZ84-JEM7].